**Roberta WRIGHT and Betty Crawford on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

**v.**

**WHITEHALL SCHOOL DISTRICT; Julius Brown, Superintendent; and Gene Whelchel, Douglas Dorris, Sr., W. H. Cameron, M. A. Hardin, Jr., Travis Wedgeworth, Tommy McHan and Don Moore, Members of the Board of Directors of Whitehall School District, Individually and in Their Official Capacities, Defendants.**

No. PB–C–80–203.

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

Nov. 9, 1981.

---

Charles D. Harrison, Cearley, Gitchel, Bo-gard, Mitchell & Bryant, Little Rock, Ark., for plaintiffs.

M. Jefferson Starling, Jr., Coleman, Gantt, Ramsay & Cox, Pine Bluff, Ark., for defendants.

## MEMORANDUM OPINION

ROY, District Judge.

This action was brought by plaintiffs on June 26, 1980, under the provisions of 28 U.S.C. §§ 1343 and 1331, as well as 42 U.S.C. §§ 1983 and 2000e *et seq.* Plaintiffs are seeking redress of their injuries individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for themselves and others similarly situated allegedly discriminated against by defendant White Hall School District. Plaintiffs contend that defendants have acted or refused to act on grounds generally applicable to the class and that final declaratory and injunctive relief and affirmative action with respect to the class as a whole are warranted, as well as back pay, under Rule 23(b)(2). Defendants filed their Answer on July 7, 1980, denying racial discrimination and denying that plaintiffs meet the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Plaintiffs filed a timely motion requesting a class certification hearing. It was held on August 31, 1981. The question in light of the evidence and testimony presented at the hearing is whether this cause should be certified as a class action as requested by the plaintiffs. The requirements of Rule 23(a) of the Federal Rules of Civil Procedure must be satisfied in order for class certification to be granted.

Plaintiffs Wright and Crawford appeared at the hearing on their own behalf. Superintendent Julius Brown appeared on behalf of the defendant School District. There were no other witnesses who appeared at the hearing.

Pursuant to the Joint Stipulation of the parties, the plaintiffs seek to be certified as representatives of a class of persons composed of:

(a) all past, present, and future certified teachers who have applied for and have been rejected or, being employed, have sought promotion to and been denied such promotion to supervisory and/or administrative positions within the White Hall School District; and

(b) all past, present, and future black applicants for employment to certified positions in the defendant White Hall School District.

With respect to the class enumerated above in subparagraph (a) of the Joint Stipulation, a great deal of elaboration is unnecessary.

First, the unrebutted testimony reveals that neither of the plaintiffs are qualified to hold a supervisory or administrative position with *any* public school district; have never held such a position with any public school district; have never been employed by the defendant School District; are not aware of the practices, policies, and procedures of the defendant School District with respect to supervisors and administrators; and have never applied for a supervisory or administrative position or applied for a promotion to such a position with the defendant School District.

This Court, in *Martin v. Arkansas Arts Center*, 21 FEP Cases 555 (E.D.Ark.1979) held that:

"The determination of class membership ultimately turns on whether the putative class representative has sustained the same injury or injuries as those alleged to have been sustained by other members of the class."

Plaintiff Crawford could not identify any other black person who had applied or sought promotion to such a supervisory po-

sition and to have been discriminated against.

Plaintiff Wright was able to name only one such person that allegedly applied for such a position and/or sought a promotion to such a position and was denied the same because of that person's race. Plaintiff Wright identified this individual as Ernest Ford. However, the unrebutted testimony reveals that plaintiff Wright did not know the following facts: the date on which Ford applied for employment; how many other applicants had applied for the same position; the race of any of the applicants who may have applied for such position; if a vacancy existed in the position applied for; whether or not any of the other applicants were better or less qualified than Ford; the name or the race of the person hired for the position, if any; and did not know if Ford was employed elsewhere before a vacancy existed within the District in such position.

Testimony further revealed that Ernest Ford has never informed any official of the defendant District, either orally or in writing, that he felt he had been discriminated against.

In addition to the above general statements and findings, the Court, having considered the pleadings, evidence, testimony of witnesses, and briefs of counsel, makes the following additional findings of fact with respect to the class certification hearing.

1. Plaintiffs Roberta Wright (hereafter "Wright") and Betty Crawford (hereafter "Crawford") are black females residing in Jefferson County, Arkansas. Wright possesses a state teaching certificate for the job of counselor and librarian. Crawford possesses a state teaching certificate for the job of secondary English teacher.

2. Defendant White Hall School District (hereafter "District") is a public school district within the state of Arkansas. Defendant Julius Brown is the Superintendent of the District and defendants Gene Whelchel, Douglas Dorris, Sr., W. H. Cameron, M. A. Hardin, Jr., Travis Wedgeworth, Tommy McHan and Don Moore are all members of the Board of Directors of the District.

3. On June 5, 1979, Wright applied for the position of librarian and/or counselor with the District. On June 20, 1979, Crawford applied for the position of secondary English teacher with the District. Neither plaintiff was hired by the District.

4. Wright and Crawford filed Charges of Discrimination with the Equal Employment Opportunity Commission on June 29, 1979, such date being 14 days after Wright applied for employment with the District and 9 days after Crawford applied for employment with the District.

5. On June 26, 1980, plaintiffs timely filed their Complaint against defendants pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C., Section 1983, alleging class-wide racial discrimination.

6. Defendants filed their Answer on July 7, 1980, denying racial discrimination and denying that plaintiffs meet the requirements of Rule 23 of the Federal Rules of Civil Procedure.

7. Plaintiff Wright testified that she had "heard" there was a vacancy existing in the position of librarian and counselor at the time of her application with the District.

8. Defendants introduced into evidence Minutes of the District School Board meeting of May 15, 1979, reflecting that Glenda Lybrand and Anna Rudy were formally hired by the District at that meeting into the teaching positions of counselor and librarian, respectively—evidence that no such vacancies existed at the time of plaintiff Wright's application for employment.

9. With respect to the position of librarian and counselor, Wright admitted the following:

That she does not know how many applicants had applied for those positions as of the date of her application;

That she does not know the qualifications of any of the applicants who applied for those positions;

That she does not know if those applicants, if any, were more or less qualified than she;

That she does not know the date any applicant, if any, was hired for those positions.

10. With respect to the position of secondary English teacher, Crawford admitted the following:

That she does not know if a vacancy existed within the District in the position of secondary English teacher at the time she made her application;

That she does not know how many applicants had applied for the position of secondary English teacher as of the date of her application; and

That she does not know if these applicants, if any, were more or less qualified than she.

11. Plaintiffs testified concerning approximately 25 named persons who had allegedly been discriminated against by virtue of making applications for employment for certified teacher positions and not being employed by the District. However, the records of the District reflected only 12 of these had ever made applications for employment. With respect to these 12 persons, plaintiffs admit they do not know:

The date on which the persons were allegedly discriminated against;

Whether or not such persons attached a copy of their college transcript to their applications;

The scholastic credentials or grade point average of the applicants;

Whether or not a vacancy existed at the time of their applications in the positions for which they were seeking employment;

The date a vacancy, if any existed, was filled by the District;

The number of applicants and their names who had applied for the same positions as the alleged discriminatees;

The qualifications of any of the other persons who had applied for the same positions;

Whether or not the person who was allegedly hired into the positions was more or less qualified than those persons named by plaintiffs;

Whether or not the alleged discriminatees obtained employment elsewhere before a vacancy even existed within the District in the positions for which those persons applied;

Whether or not such persons have contacted the District or re-applied for employment since the time of their original applications; and

Whether or not such persons filed Charges of Discrimination with the Equal Employment Opportunity Commission against the District alleging racial discrimination.

12. None of the 12 persons named by plaintiffs filed Charges of Discrimination with the Equal Employment Opportunity Commission.

13. None of the 12 persons have ever notified, verbally or in writing, any official of the District that they felt they were being discriminated against.

14. Three of the 12 persons named by plaintiffs who applied for employment with the District made application more than 180 days prior to the date plaintiffs filed their Charge of Discrimination with the Equal Employment Opportunity Commission. These three persons cannot be members of a class pursuant to Title VII of the Civil Rights Act of 1964, as amended, since none have filed Charges of Discrimination with the Equal Employment Opportunity Commission.

15. The parties stipulated that as of June 1980 the District employed two black teachers. Testimony revealed that since that time, two additional black teachers have been hired by the District. Other than the 12 persons named by plaintiffs who made application with the District, plaintiffs did not introduce any evidence, through testimony or by virtue of discovery before the Court, concerning the number of certified black applicants as compared to the number of certified white applicants, the dates such applications were made, the numbers of vacancies available, the qualifications of the applicants, the number of blacks in the relevant labor market, the percentage of blacks in the relevant standard metropolitan statistical area. Superintendent Brown testified that until the last 3 years the District received virtually no

applications from black persons for certified positions. He also testified that the defendant District had, within 4 months prior to the filing of this action, been involved in a lengthy and exhaustive investigation by the Office of Civil Rights as an agency under the Department of Health, Education and Welfare (HEW). The District introduced into evidence at the hearing the written investigative report and findings of the HEW, pursuant to its investigation, which revealed that the defendant District did not engage in discrimination in its hiring procedure or processes. (Defendants' Exhibit B.) Plaintiffs objected to the admission of the letter report which defendants contended was admissible as a business record. In view of plaintiffs' objection, the Court has decided not to consider Defendants' Exhibit B in resolving the issue of class certification.

16. The demographic evidence indicated above is essential to compare the actualities of the District's hiring practices with the realities of the existing relevant labor markets or to determine if the District's policies comply with the standard deviation methodology approved by the U. S. Supreme Court in *Hazelwood School District v. U. S.*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977).

17. Plaintiffs failed to demonstrate that they have adequate financial resources to properly bear the responsibilities incurred in connection with being representatives of a class. Plaintiff Wright admits that she does not know how much she would be willing to expend. Plaintiff Crawford admits that although she expects the Arkansas Teacher Association to make a financial contribution in her behalf, she does not know the amount of that expected contribution and, further, that she, personally, does not have as much as $1,000.00.

In view of the above factual determinations, the Court finds the following conclusions of law to be appropriate here:

The Court has proper jurisdiction over this action.

The Eighth Circuit Court of Appeals in *Wright v. Stone Container Corp.*, 524 F.2d 1058 (1975), stated:

"The class representative must initially meet four prerequisites in order to obtain certification of a class action. He must show that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) class or defenses of the representative parties are typical of the claims or defenses of the class; (4) representative parties will fairly and adequately protect the interest of the class.

"The class representative must also meet one of the prerequisites of Rule 23(b) which are (1) The defendants currently and in the past have acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole. (2) There are difficulties likely to be encountered in managing a class action; and, a class suit is superior to other methods of handling the suit."

█ It is beyond question that plaintiffs seeking a class certification have the burden of establishing that class action treatment is appropriate under the specific requirements of Rule 23(a) of the Federal Rules of Civil Procedure. These requirements are mandatory. *Strong v. Arkansas Blue Cross*, 23 FEP Cases 1386, 87 F.R.D. 496 (ED Ark.1980); *Newton v. The Kroger Company*, 21 FEP Cases 110, 83 F.R.D. 449 (ED Ark.1980); *Paxton v. Union National Bank*, 519 F.Supp. 136, 25 FEP Cases 1651 (ED Ark.1981); *Jones v. MacMillan Bloedel Containers, Inc.*, 84 F.R.D. 640, 25 FEP Cases 1544 (ED Ark.1979).

█ With respect to the class of persons plaintiffs seek to represent identified in subparagraph (a) of the Joint Stipulation of the parties, it is clear that plaintiffs have failed to establish they are adequate representatives of any such purported class. Both plaintiffs testified they have never applied for a supervisory or administrative position within the defendant District; have never served in a supervisory and/or administrative position within the District; have never sought promotion to a supervisory and/or administrative position within the District; have never been denied a pro-

motion to a supervisory or administrative position within the District; do not possess the proper certification necessary to qualify as supervisors or administrators within the defendant District or, for that matter, any other school district within the state of Arkansas.

■ In order to meet the adequacy of representation requirement under Rule 23, plaintiffs must prove that they possess the same interest and suffer the same injury as those whom they seek to represent. See *Newton v. The Kroger Company, supra; Tuft v. McDonnell Douglas Corp.*, 581 F.2d 1304, 17 FEP Cases 1442 (8th Cir. 1978). Plaintiffs, by their own testimony, have failed to prove they possess the same interest or have suffered the same injury as a purported class of persons who have applied for and have been rejected, or have sought promotion and been denied such promotion to supervisory and/or administrative positions within the District and, thus, plaintiffs are precluded from representing such a purported class.

As to the requirement of numerosity, plaintiffs cannot rely solely upon the bare allegations set forth in their complaint. In the case of *Blankenship v. Wometco-Blue Circle, Inc.*, 59 F.R.D. 308 (ED Tenn.1972), the court stated at page 309:

"It is also incumbent upon plaintiff to prove that the class she represents is so numerous that joinder is impractical. . . . There is no magic in the phrase 'similarly situated'. Designating an action as a class action produces serious consequences for the parties involved, the Court, and others who may be bound. If joinder is practical, it should be attempted . . . ."

■ A bare allegation of numerosity does not satisfy the requirement of Rule 23(a)(1). As stated in *Rex v. Owens, ex rel. State of Oklahoma*, 585 F.2d 432, 436 (10th Cir. 1978):

"In class action suits there must be presented some evidence of established, ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement."

■ Although no court has attempted to select an arbitrary numerical limit which would satisfy the numerosity requirement of Rule 23(a), the courts have, in all cases, including Title VII cases, consistently applied stringent requirements to numerosity. See, e. g., *Pruitt v. Commercial Carriers, Inc.*, 395 F.Supp. 1040, EPD 9344 (ND Ala. 1974), in which class action was denied because it had less than 30 members; *Moore v. Louisville Downs, Inc.*, 7 EPD 9151 (WD Ky.1973), aff'd. 7 EPD 9210 (6th Cir. 1973), where a class action was denied for a group numbering 13; and *Mason v. Calgon Corporation*, 63 F.R.D. 98 (WD Pa.1974), where a class action was denied for a class of 23 persons. The Eighth Circuit Court of Appeals has held that separate classes of 13 applicants and 11 applicants were too small to be certified as a class action. *Tuft v. McDonnell Douglas Corporation, supra.*

Plaintiffs have been unable to demonstrate any awareness of the discrimination inflicted upon the alleged 12 class members named. To simply state names of blacks who have not been employed by the District does not adequately support the claim that such unemployed persons are the victims of discrimination, particularly when plaintiffs have a lack of knowledge with regard to any specific acts of discrimination allegedly perpetrated against these persons. In *Foster v. Bechtel Power Corp.*, 89 F.R.D. 624, 25 FEP Cases 1549 (ED Ark.1981), Judge Henry Woods said:

"The Court agrees with the Defendant that broad allegations of class discrimination do not in and of themselves satisfy the numerosity requirement."

In *Martin v. Arkansas Arts Center, supra,* the Court stated:

"While the discovery evidenced before the Court establishes the number of black and white persons employed by the defendant during the relevant years, the departments in which the persons employed and the racial composition of each department, *the Court is unable to infer either the existence or absence of racially discriminatory practices on the basis of these body count statistics alone.* Without additional demographic evidence such as the number of blacks in a relevant

labor market and the percentage of blacks for each year in question, in the relevant standard metropolitan statistical area, *we have no basis for determining the significance of the actual numbers of black and white persons employed by the defendant."* 21 FEP Cases 559. [Emphasis added.]

See, also, *Hauck v. Xerox Corporation,* 78 F.R.D. 375, 17 FEP Cases 154 (ED Pa.1978).

 Title VII actions must be preceded by an EEOC charge, which must be filed within 180 days of the alleged violation, and it is not appropriate for a Title VII class to include persons whose charges would be time-barred at the time when the plaintiffs filed their charges. *Newton v. The Kroger Company, supra; Taylor v. Teletype Corp.,* 475 F.Supp. 958, 20 FEP Cases 1079 (ED Ark.1979); *Wetzel v. Liberty Mutual Insurance Company,* 508 F.2d 239, 246, 9 FEP Cases 211, 216 (3d Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Three of the 12 persons named by plaintiffs made application for employment with the District more than 180 days preceding plaintiffs' filing of their Charges of Discrimination. Those 3 persons are, therefore, precluded from being potential class members under Title VII.

It is also noted that plaintiffs have not submitted any evidence as to their financial ability to support the expenses and costs of class-oriented litigation. Plaintiffs' testimony reveals they do not have adequate financial resources to properly fund the responsibility of a class-action suit and thereby fail to prove that they would adequately protect the interests of the purported class. The claims of nameless others cannot safely be laid on the shoulders of these representatives. See *Strong v. Arkansas Blue Cross, supra; Neloms v. Southwestern Electric Power Company,* 72 F.R.D. 128, 131, 18 FEP Cases 1678, 1680–1681 (WD La.1976); *Parker v. Kroger Company, Inc.,* 14 FEP Cases 75, 82 (ND Ga.1976).

Plaintiffs have failed to establish that a class exists and, if a class does exist, that members of that class are so numerous as to make their joinder impracticable. Plaintiffs have further failed to meet their burden of showing that they could fairly and adequately protect the interest of members of the class.

Accordingly, the motion for class certification is denied and the cause will be set for hearing on the merits as soon as practicable.